# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

DANIELLE M. WHITE, JOHN )
DOE NO. 1 and JOHN DOE NO. 2 )
)
V. )      CASE NO. 2:14-CV-115
)
STATE OF TENNESSEE, *ET AL.* )


DANIELLE M. WHITE )
)
V. )      CASE NO. 2:14-CV-117
)
EAST TENNESSEE STATE )
UNIVERSITY, *ET AL.* )


DANIELLE M. WHITE, JOHN )
DOE NO. 1 and JOHN DOE NO. 2 )
)
V. )      CASE NO. 2:14-CV-118
)
STATE OF TENNESSEE, *ET AL.* )


## REPORT AND RECOMMENDATION

The plaintiff, representing herself, has filed four complaints against a host of

individuals, agencies, and entities, seeking damages, injunctive and declaratory relief, and

the writ of habeas corpus, all of which were assigned initially to District Judge Leon Jordan

and Dennis H. Inman, Magistrate Judge. She filed a motion with each complaint that she be

allowed to proceed *in forma pauperis.* Each motion included an affidavit in which she

asserts that she is financially unable to prepay any costs or give security therefor.

Section 1915 of title 28 of the United States Code allows a litigant to commence a civil action in federal court without paying the statutory filing fees or any other security. Normally, the court's review of an *in forma pauperis* application is based solely on the affidavit of indigency submitted by the plaintiff. *See, Gibson v. R.G. Smith Co.*, 915 F2d. 260, 262-63 (6th Cir., 1990). An affidavit to proceed *in forma pauperis* is sufficient if it states that the petitioner cannot, because of poverty, afford to pay the cost of litigation and still pay for the necessities of life. *Adkins v. W.I. DuPont, Nemours & Co.* 335 U.S. 331, 342 (1948).

Assuming the truth of the matters set forth in each motion to proceed *in forma pauperis*, it appears that her application to so proceed should be granted. However, notwithstanding that her application to proceed *in forma pauperis* in each case should be granted, this court may not allow process to issue until it is determined that the various complaints filed by the plaintiff arguably have some legal merit to them, as required by 28 U.S.C. § 1915(e)(2)(B). A court which finds an *in forma pauperis* complaint frivolous or malicious may dismiss it, *sua sponte*, without service of process on the defendant(s) so long as the court does not require the plaintiff to pay a filing fee, *Clark v. Ocean Brand Tuna*, 974 F2d. 48 (6th Cir. 1992).

District Judge Jordan directed the magistrate judge to review under 28 U.S.C. § 1915(e)(2)(B) each of the complaints assigned to him and to issue a report and recommendation regarding whether they should be allowed to go forward. Subsequently, all

2

four cases were reassigned to District Judge Greer, and he has rescinded the Order of Reference regarding the petition for habeas corpus. Therefore, this report and recommendation will address only case numbers 2:14-CV-115, 117, and 118, each of which is filed as a civil rights suit pursuant to 42 U.S.C. § 1983.

By reading the complaint in case number 115, the complaint in case number 2:09-CV-211,[1] and the five Status Reports and attachments in that case, the genesis of the three suits discussed in this report and recommendation can be puzzled out:[2] On July 27, 2009, a crew of non-English speaking illegal immigrants (plaintiff's description) trespassed upon her property in Greene County, Tennessee, and began spraying herbicide in the right-of-way across plaintiff's property for electrical transmission lines. Plaintiff and her husband, who farm organically - *i.e.*, without pesticides and herbicides - ordered these workers to cease spraying and leave "their" property. When the workers declined to do so, plaintiff fired a gun, after which the workers left.[3] Officers with the Greene County Sheriff's Department ultimately appeared at plaintiff's door, and she was charged with two counts of aggravated assault. She was tried in the criminal court for Greene County in September, 2010, convicted,[4] and sentenced to a term of imprisonment with the Tennessee Department of

---

[1] Which is assigned to District Judge Ronnie Greer and Dennis H. Inman, Magistrate Judge.

[2] The opinion of the Tennessee Court of Appeals, filed as document 66-1 in 2:09-CV-211, is especially helpful.

[3] She says that she fired the weapon "90 degrees . . . away from . . . the men. . . ."

[4] The jury obviously concluded, beyond a reasonable doubt, that she fired at the "illegal immigrants," not "90 degrees away from them;" see also the opinion of the court of criminal appeals.

Correction. She is now on parole[5] and therefore under the supervision of a Tennessee state parole officer.

With the foregoing as background, this report and recommendation will address each complaint in turn.

## 2:14-CV-115, Danielle White, John Doe No. 1, John Doe No. 2 (minors) vs. State of Tennessee, *et al.*

This complaint is a 32-page document that asserts a myriad of disjointed and confusing claims against the state of Tennessee; the Commonwealth of Virginia; various state officials, including the state attorney general; various officials of Greene County, Tennessee, including its sheriff; Greeneville Light and Power System; a state criminal court judge; the Greene County Sessions Court Judge; one or more prison wardens; manufacturers of herbicides; and a number of other state and county officials. She claims that these entities and individuals violated her civil rights.

The complaint defies paraphrasing; there are people discussed in the body of the complaint who are alleged to have committed some common law or constitutional tort, yet are not named in the caption as a defendant, and there are people named as parties in the caption who are never again mentioned in the complaint. Claims are asserted in one place in the complaint, then repeated in another section, sometimes with regard to the same

_____

[5] Or perhaps probation; her status is unclear. Regardless of which, it makes no differnce.

4

defendant, sometimes with respect to other defendants.

## DISCUSSION AND RECOMMENDATIONS

**I. People, agencies, and entities named in the caption of plaintiff's complaint as defendants, but never mentioned in the body of the complaint itself:**

> Unidentified female correctional officer
> State Attorney General
> State Attorney General Robert Cooper
> Greene County commissioners
> Unidentified pesticide contractor
> Greeneville Water Commission
> T.D.E.C.
> Sheriff Jason Taylor
> Jeff Davis
> Ricky Graham
> Nufarm Americas, Inc.
> Dow Agrisciences, Inc.
> VDACS[6]
> VDOT[7]
> AMC Specialty, Inc.
> Albaught, Inc.
> Assistant Warden Robin Porter
> Warden Eric Qualls

The court acknowledges that a *pro se* litigant should be granted some allowance with respect to the format and construction of a complaint, but on the other hand a court should not speculate as to the identity of a defendant and allow service of process to issue based on that speculation. Nor should the court allow a defendant to be served with process and

---

[6] What these letters stand for is never described. The court assumes that it is an agency in the Commonwealth of Virginia.

[7] Id.

thereby incur significant expense and anxiety when that defendant has no idea what he is alleged to have done. To do so would constitute an abuse of the process of this court, and the court should not facilitate such abuse. *See*, *Wells v. Brown*, 891 F2d 591 (6th Cir. 1989) (a court should not "conjure up unplead allegations," even for *pro se* litigants). *See, also, Brown v. Matauszak*, 2011 W.L. 285251, *5 (6th Cir., Jan. 31, 2011). ("It is still necessary to include some 'well-pleaded factual allegations' to support the claim.") (Quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Therefore, it is recommended that plaintiff's suit against these defendants named in the caption, but not otherwise discussed at all in the body of the complaint, be peremptorily dismissed.

## II. The following are the various actors named in the body of the complaint (not necessarily in the caption), and the allegations against them:

### (1) State of Tennessee

\* The State of Tennessee is alleged to have conspired with Criminal Court Judge John Dugger and Public Defender Greg Eichelman[8] to violate Danielle White's right to due process by failing to appoint counsel and only appointing elbow counsel in September, 2010. Also, the State is alleged to have violated T.C.A. §§ 13-16-402, 39-16-403, 39-12-103, 39-12-204(a)(c) and (d), and her right against involuntary servitude under the 13th Amendment to the United States Constitution.

\* The State is alleged to have been an illegal organization under the Federal RICO statute.

---

[8] Who is not listed as a defendant.

* She contends the state is an "artificial entity" and thus has no jurisdiction over her.

* She argues that under Article III of the United States Constitution, in suits to which a state is a party, the United States Supreme Court has original jurisdiction, by reason of which she asserts any actions against her, which presumably includes the criminal action, should have originated there.

* She asserts that the state conspired with the "State Pesticide Division" to withhold evidence pertaining to criminal violations of employees of Helena Chemical Co., Spraying For Excellence, and Greeneville Light and Power which could have been used by her in defense at trial.

Plaintiff's suit against the state of Tennessee should be dismissed for one overarching reason: her suit is barred by the Eleventh Amendment to the Constitution. Not only does that amendment bar suits by the citizen of one state against another state, it bars suits against a state by citizens of that same state as well. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 276 (1986). Since Tennessee has not waived its immunity to this suit under the Eleventh Amendment, nothing further need be said about this aspect of plaintiff's complaint.

The other allegations and theories raised by plaintiff require little or no discussion: Plaintiff's allegation that the state of Tennessee is a "Racketeer Influenced Corrupt Organization" requires no discussion, other than to state that it is patently frivolous.

Her claim or theory that a prison sentence, or a term of parole thereafter, constitutes "involuntary servitude" under the Thirteenth Amendment is also frivolous. The Amendment itself excludes any punishment for a crime from its prohibition. *See*, as one example of

7

hundreds: *Lee-Bryant v. Beseau*, 2009 WL 980810 (W.D. Mich. 2009), and cases cited therein.

Her claim that the state is not a "natural entity" and thus has no jurisdiction over her is not understood. Whatever she means, one thing is for certain: the state of Tennessee has jurisdiction over those within its borders who violate its laws.

Plaintiff's contorted construction of Article III, Section 2 of the Constitution, *viz*, that she was subject to trial only by the Supreme Court, is frivolous.

Lastly, all other issues aside, she states no basis for her allegation that the state "conspired" with the "State Pesticide Division," whatever that is, to withhold evidence favorable to her at her criminal trial. Plaintiff continues to insist in the complaint filed in this court, as she apparently did at her criminal court trial, that firing a weapon at workers spraying herbicide on a right-of-way across her property was justified because the herbicide is a noxious chemical. Judge Dugger apparently did not allow her to present such irrelevant claims, and neither should this court. In a § 1983 action for damages, if a judgment for the plaintiff necessarily implies the invalidity of an underlying criminal conviction, the action must be dismissed unless the plaintiff can show that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state court, or called into question by a federal court's issuance of a writ of habeas corpus, *Heck v. Humphrey*, 512 US 477, 486 (1994).

**(2) Judge John Dugger and Judge Ken Bailey**

    **\*** Judge Dugger conspired with the State and Public Defender Eichelman as indicated

8

above.

* Ms. White alleges that an affidavit of indigency is unconstitutional, and that she should have been provided counsel regardless of her economic status.

* Judge Dugger also denied without a hearing her motion for experts in guns, optometry, "science", and constitutional law.

* She says he violated her constitutional rights by not allowing her to argue a motion to suppress in September, 2010, and he refused to allow a hearing on her "stand your ground" motion and heckled her.

* He failed on December 21, 2009 to have a hearing on her motion to dismiss.

* He violated her right to keep and bear arms.

* He refused her request to be free on bond on September 13, 2013.

* He did not give her credit on her sentence for a week spent in a Virginia jail to which she voluntarily reported prior to being taken into custody to serve her Tennessee sentence.

* He allowed deputies to "speak hearsay" at her trial, which presumably were her statements she made which she said violated her *Miranda*[9] rights.

* Judge Dugger denied her right to a jury of her peers, allowing "handpicked" jurors instead of jurors drawn from the rolls at random.

* He failed to dismiss her case on a motion, arguing that the Supreme Court had

_____

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

9

original jurisdiction of suits involving states.

 \* He and all other state judicial officers, including the Tennessee Supreme Court, get their checks from the State and therefore cannot be unbiased.

 \* Only God has jurisdiction over her.

 \* Judge Bailey refused to hear plaintiff's motions and denied her request to produce the illegal immigrants "at the scene of the so-called crime." He denied her right to counsel, and refused to have a hearing on a "stand your ground" defense.

 Every action of the two judges of which plaintiff complains was taken in their official capacities. Thus, they have absolute judicial immunity; *see, e.g., Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *Campbell v. Strong*, 1988 WL 136549 (6th Cir. 1988).

 Additionally, every action by these two judges, and the Assistant Attorney General, necessarily occurred in 2009. The statute of limitations applicable to a § 1983 action is one year, T.C.A. 28-3-104; *Ball v. Union Carbide Corp*. 376 F.3d 554 (6th Cir. 2004). Plaintiff filed this complaint on April 9, 2014, far beyond the expiration of the statute of limitations.

### (3) Public Defender Greg Eichelman

 \* He conspired as above with the State and Judge Dugger by not appointing her counsel at her trial, instead appointing elbow counsel.

 Public Defender Eichelman is just that - the Public Defender. He has no authority to appoint a lawyer, including himself, to represent a defendant. It follows he cannot conspire to refuse to do something he cannot legally do in the first place. Additionally, conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations

10

unsupported by material facts, like those offered here, are not sufficient to state such a claim. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Additionally, any action against him is barred by the running of the statute of limitations.

### (4) Assistant District Attorney David Baker

\* Assistant District Attorney Baker violated her "constitutional rights" by continuing to prosecute her in spite of the "stand your ground" law and the "Castle Doctrine" of the United States Supreme Court. He violated her First Amendment right to petition the government for redress of grievances by not prosecuting the men and companies who trespassed and sprayed toxic chemicals on her property.

The district attorney general, as well as any assistant district attorney general, likewise has absolute immunity for any activities that were an "integral part of the judicial process," *Imbler v. Pachtman*, 424 U.S. 409 (1976). Also, as discussed in the next section, a private citizen has no constitutional right to compel a prosecutor to pursue criminal charges against another person.

### (5) State employees John White, Lynn Snodderly and Kathy Booker

\* These people violated plaintiff's "rights" and obstructed justice by failing to prosecute Helena Chemical Company, Paul Pridgen, Spraying For Excellence (S.P.F.), and Greeneville Light and Power Company for trespassing, failing to have a "licence", failing to have a list of employees, and for spraying herbicides in a negligent manner in violation of state and federal laws. Also, they "withheld evidence" at her trial.

11

No state employee, including any law enforcement official or prosecutor, commits a Constitutional violation by refusing to investigate a criminal offense; or for refusing to arrest anyone; or for refusing to prosecute anyone. "[T]he law is clear that a private citizen has no Constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime," *Woods v. Miamisburg City Schools*, 254 F.Supp.2d 868, 873-74 (SDOH, 2003).

Again, plaintiff's action is barred by the one-year statute of limitations.

Additionally, a claim of negligence is not a constitutional tort, *Lewellen v. Metropolitan Gov't of Nashville, Ampersand, Davidson County*, 34 F.3d 345, 348 (6th Cir. 1994).

As far as "withheld evidence" is concerned, that allegation implicates the *Heck v. Humphrey* doctrine.

Plaintiff states no claim against these three proposed defendants.

**(6) "Sheriffs' deputies" and Officer Chuck Humphreys**

\* These individuals violated plaintiff's 14th Amendment equal protection rights by failing to properly investigate and prosecute the trespassers, including the "illegal immigrants" who didn't speak English. They also failed to arrest those illegal immigrants, as well as Paul Pridgen and David Caldwell (who presumably are other employees of the entity which did the spraying) for violating pesticide codes, for trespassing, and for hiring illegal immigrants. The deputies also asked her questions in violation of her Miranda rights after she asked for an attorney. They entered her house without a search warrant and seized

her gun, which was a fruit of the poisonous tree, all of which necessarily occurred in July of 2009.

\* On April 25, 2013, they allegedly would not give her the right to make a phone call to any attorney so she could get out on bail while appealing her state conviction to the Tennessee Supreme Court.

Plaintiff's claim against Deputy Sheriff Chuck Humphreys and " other officers" for refusing to arrest (someone) and for refusing to investigate violations of the state pesticide codes states no common law or constitutional claim, *Woods v. Miamisburg City Schools*, *supra*.

These alleged actions by these defendants occurred in 2009, more than one year before plaintiff filed this complaint.

Her claims, if allowed to go forward, would fly in the face of *Heck v. Humphrey*, *supra*, since plaintiff's conviction has not been invalidated.

**(7)  Greene County Sheriff's Department and Steve Burns and "other staff members" (Claims Regarding Her Confinement at the Greene County Jail)**

In paragraphs 26 through 69, plaintiff asserts a myriad of claims against the Greene County Sheriff's Department, Sheriff Steve Burns, and "other staff" regarding her period of incarceration at the Greene County Detention Center.

Her allegations are a hodge-podge of claims and theories, some of which she asserts in other portions of her complaint, *e.g.*, that certain individuals violated her constitutional rights by failing to prosecute people or companies who trespassed on her land in 2009.

13

Nevertheless, the court will discuss these allegations in the context of the Eighth Amendment, except when otherwise noted.

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97 (1976). A claim asserted under the Eighth Amendment involves both an objective and subjective component, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Objectively, a plaintiff asserting a § 1983 claim under the Eighth Amendment must show that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Subjectively, the plaintiff must show that the prison officials acted wantonly and with *deliberate indifference* to his serious needs, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Mere discomfort or inconvenience" does not rise to the level of an Eighth Amendment violation, *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005). Deliberate indifference is more than mere negligence; it borders on intentional wrongdoing, *Farmer*, 511 U.S. at 842.

Finally, the length of time to which a plaintiff is exposed to a condition is relevant in determining whether a constitutional violation has occurred: *see, Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979) (noting that a *de minimus* level of imposition is not a constitutional concern). Short-time privations do not typically rise to constitutional magnitude.

14

Plaintiff's allegations against Sheriff Burns and the Sheriff's Department[10] have been analyzed in light of the foregoing criteria.

*Paragraph 26*: Plaintiff alleges that Sheriff Burns and "other staff" transferred her to new locations and thereby prevented her from filing a writ of certiorari to the U.S. Supreme Court within the time allowed to do so, as well as causing "tensions and stress within [her] family."

These allegations do not implicate the Eighth Amendment's prohibition against cruel and unusual treatment. To the extent that she seeks to rely upon the due process clause of the Fourteenth Amendment, that is a matter which she could have raised in a petition for habeas corpus or for state Post-Conviction Relief, but it is not cognizable as a § 1983 claim for damages. "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum v. Fano*, 427 U.S. 215, 228 (1976). Any other relief she otherwise could request in a § 1983 action, *e.g.*, injunctive relief, is now moot since she is no longer incarcerated.

*Paragraph 27*: She asserts that the "female pods" at the Greene County Jail were over-crowded with 30 women being forced into approximately 22 beds.

Over-crowding, in and of itself, is not necessarily unconstitutional, *Johnson v.*

---

[10] Which, for whatever it is worth, is not a suable entity. Greene County is the proper party against which this claim should be asserted.

*Heffron*, 88 F.3d 404 (6th Cir. 1996) unless the inmate is deprived of the minimal civilized measure of life's necessities, *Rhodes v. Chapman*, 452 US 337 (1981). As described by plaintiff, this particular claim is *de minimis* and does not arise to the level of a constitutional deprivation, *Talal, supra*.

\* *Paragraph 28*: Her complaint that there was only one shower for over 30 women is *de minimis* and states no constitutional violation, *Johnson, supra*.

\* *Paragraph 29*: Her claim that there were only eight beds for 12 women in a particular cell describes an uncomfortable and undeniably unpleasant situation, but it does not arise to the level of a constitutional deprivation, *Johnson, supra*.

\* *Paragraph 30*: Her complaint that she was given "toxic shampoos" to combat an infestation of lice once again is *de minimis*, not to mention frivolous.

\* *Paragraph 31*: The fact that the jail provided only "thongs" but no socks, is *de minimis*.

\* *Paragraph 32*: Mice coming up through the drain in the women's shower doubtlessly was unsettling, but it falls short of being an "intolerable condition," *Rhodes v. Chapman, supra*.

\* *Paragraph 33*: Being given a mattress only one-fourth to one-half inch thick falls far short of being an intolerable condition. It doubtlessly was uncomfortable, but it cannot be described as intolerable.

\* *Paragraph 34*: Not being provided any "outdoor time" or an exercise area could violate the Eighth Amendment under certain circumstances, *Rodgers v. Jabe*, 43 F.3d 1082

16

(6th Cir. 1995), but plaintiff fails to state how *she* was adversely affected. A plaintiff cannot assert claims on behalf of other prisoners, *Whitmore v. Arkansas*, 494 US 149 (1990), and the court should not write or re-write a plaintiff's complaint, *Clark v. National Travelers Life Ins. Co.,* 518 F2d 1167 (6th Cir. 1975).

\* *Paragraph 35*:  She repeats her claim in this paragraph that she first asserted in paragraph 30, *viz*, that the jail furnished her only "toxic" shampoos and soaps.

\* *Paragraph 36*:  In this paragraph, she complains that her family members were not allowed to donate books to the library because jail personnel claimed that people smuggled drugs into the jail in those books.  She asserts that "all they had to do was flip through the books."

Plaintiff's cavalier assertion that jail personnel should "flip through the books" ignores the fact that suboxone, a widely-abused drug, is dispensed on dissolvable strips which can easily be inserted deep into the page binding of a book and which cannot be dislodged merely by fanning the pages.  To combat the introduction of suboxone into the jail, the jailers would have to turn every page in every book, bending the book backwards on its spine at each turn of a page, to insure that nothing has been inserted deep within the crevice.  The time required for such an endeavor boggles the mind.  This states no serious deprivation of rights secured by the Eighth Amendment.

\* *Paragraph 37*:  In this paragraph, plaintiff apparently seeks to assert claims on behalf of drug addicts who have been incarcerated, as opposed to asserting her own claims.  Suffice it to say that she has no authority to assert claims on behalf of other inmates,

*Whitmore*, *supra.*

&ast; *Paragraph 38*:  In this paragraph, plaintiff complains that no hot meals were served in the jail, and that inmates were spending up to $50 a week at the commissary on unhealthy food.  She also lists what she apparently claims was the usual daily fare at the Greene County Jail.

Depending upon one's gastronomic preferences, the jail's menu may or may not be palatable.  Regardless, assuming that the jail served the food as plaintiff alleges, there was no deprivation of *essential* food, *Rhodes, supra.*

&ast; *Paragraph 39*:  In paragraph 39, plaintiff alleges that the cells were "freezing cold at around 40-50 Degrees and [she] and inmates [were] only given a short sleeve jumpsuit to wear with thongs."

Recalling that an Eighth Amendment claim contains a subjective element - *viz*, a culpable state of mind that amounts to deliberate indifference - the plaintiff must do more than merely allege that she was cold.  For how long was she exposed to that temperature?  Did she ask for, and was refused, a better garment or blanket?  If she did, whom did she ask?  None of this has she alleged.

&ast; *Paragraph 40*: In this paragraph, plaintiff states that she has been told by "other inmates" that visitors are forced to visit through glass they cannot see through.

If true, that is a matter between those "other inmates" and the sheriff, and it is not the business of this plaintiff, *Whitmore, supra.*

&ast; *Paragraph 41*: Here, plaintiff complains that a prisoner is required to furnish the jail

18

a list of potential visitors, and how would a prisoner "know someone wanted to visit them in the first place if they contact them?"

This states no Eighth Amendment claim at all; it is frivolous.

**\*** *Paragraph 42*:  Plaintiff complains that the jail officials refuse to give her bottled water, and she was thus forced to drink toxin-laden tap water, which of course is water furnished by the town of Greeneville, regularly consumed by thousands of people every day.

This claim is frivolous.

**\*** *Paragraph 43*:  She complains that she and 30 other female inmates had only two tables that would seat a total of eight people, and there was no place to sit and watch the one television.

This claim is frivolous.

**\*** *Paragraph 44 and 45*:  In paragraph 44, plaintiff alleges that there was black mold growing on the showers and walls.  In paragraph 45, she claims that she and "several prisoners" had "sinus problems" due to the mold exposure, their nutritionally deficient diet, and poisonous water.

Her claims regarding the deficient diet and poisonous water already have been addressed.  Her claim regarding sinus problems, even if the mold is assigned 100% of the fault therefor, nevertheless does not pose an excessive risk to health or safety that amounts to a violation of the Eighth Amendment, *Farmer v. Brennan*, 511 U.S. 825 (1994).[11]

---

[11] See, *James v. Hammond*, 2011 WL 2110039 (E.D.Tenn 2011) (holding that a prisoner's allegation that he had developed a respiratory infection due to exposure to black mold did not result in denial of minimal civilized measure of life's necessities.)

**\*** Paragraph 46: Plaintiff says in this paragraph that "the overcrowding and unsanitary conditions led to increased illness with no proper cleaning sprays."

This allegation is conclusory, with no factual underpinning to support it; *see, e.g., Jackson v. Withrow,* 1991 WL 138452 (6th Cir. 1991).

**\*** *Paragraph 47*: Plaintiff complains that inmates have no access to a clock so that they could prepare for court or other appointments.

This claim is frivolous.

**\*** *Paragraph 48*: Plaintiff complains that inmates had no access to law books or a library to assist them in preparing for court or to conduct research. (It is impossible to determine if she is complaining that she herself had no such access.)

"[T]o state a claim under section 1983, the prisoner must allege that he was actually denied access to the courts, not to the prison law library." *Whittington v. Wilson* 1986 WL 16744 (6th Cir. 1986); *Witzke v. Boots*, 1989 WL 111587 (6th Cir. 1989).

**\*** *Paragraph 49*: This paragraph defies interpretation. First, she says that other prisoners (apparently not plaintiff herself) witnessed another female arrestee brought into the jail who had over-dosed and "foaming at the mouth." Then, suddenly addressing her own situation, plaintiff says, "Instead of taking me to hospital, prison staff put me in the drunk tank."

The court is not obliged to try to divine the meaning of a litigant's allegation. This paragraph makes no sense at all. If perchance this refers to what she later discusses in paragraph 114, it still does not state a constitutional claim either under the Eighth

20

Amendment or the Fourteenth; three hours in solitary confinement, even in the "drunk tank," does not constitute a "serious deprivation" of life's necessities, *Rhodes, supra.*

    * *Paragraph 50*:    Plaintiff makes two assertions in this paragraph.    First, she complains that she was forced to use the toilet in view of other prisoners.    (Since she has mentioned in several other places in her complaint that she was incarcerated in a "female pod," these "other prisoners" were female.)    Secondly, she claims that "[t]here are cameras mounted behind the mirrors."

    Being observed upon the toilet surely is a disagreeable experience, but under the circumstances as alleged by plaintiff, it does not state an Eighth Amendment violation; *see*, *e.g.*, *Butler v. Jewell*, 1989 WL 16851 (6th Cir. 1989).  *See*, also, *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992).  (Finding that the Fourth Amendment protects a prisoner's right to privacy against the forced exposure of her body to strangers of the *opposite* sex.)

    Her claim that there are cameras mounted behind mirrors contains no other factual allegations to support it, and thus states no claim under §1983, *Harley v. Barry*, 1985 WL 13784 (6th cir. 1985).

    * *Paragraph 51*:  She claims that the florescent lights were left all day and all night which created an "unhealthy environment."  Her claim that leaving the lights on 24 hours a day constitutes an unhealthy environment is vague and conclusory.

    * *Paragraph 52*:  She first says in this paragraph that there was no access to a doctor or "naturopathic" doctor.  Then in the next sentence she says that the doctor only comes on Mondays.

21

Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment because such indifference constitutes the unnecessary and wanton infliction of pain, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Plaintiff, however, nowhere states in her complaint that she was denied access to a physician or other health care practitioner when she required medical attention for a serious medical need. This states no Eighth Amendment claim.

**\* *Paragraph 53*:** She complains that the jail had no "posted menus." If true, it nevertheless states no Eighth Amendment violation.

**\* *Paragraph 54*:** In this paragraph she complains that the staff was "inattentive to prisoner's needs," and they did not perform checks every hour as the state of Tennessee rules require.

"Inattentive" is a conclusory assertion that states no Eighth Amendment claim. Neither does the jail's failure to perform checks every hour as "the rules" require give rise to a constitutional violation. A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable," *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

**\* *Paragraph 55*:** Plaintiff complains that bunk beds are unsafe since they have no guard rail on top. Moreover, it is difficult to get into the top bunk with no ladder or assistance.

Apart from the fact that plaintiff fails to allege that it was she who was consigned to

a top bunk, this states no Eighth Amendment violation; it is *de minimus*.

*Paragraph 56*: Plaintiff's complaint that a lack of sufficient seating forced her and other prisoners to eat their meals while seated on their beds states no Eighth Amendment violation.

*Paragraph 57*: Here, she states that the ice chest in her cell was unsanitary. This claim is *de minimus*.

*Paragraph 58*: this paragraph says simply: "Complete violation of 1400-1-.12.

This claim is not merely vague, it cannot be understood at all. Nevertheless, to the extent she is alleging that the jail violated a Tennessee regulation regarding the operation and maintenance of jails, she fails to specify any facts to support her allegations that there was a "complete violation."

*Paragraph 59*: Here, plaintiff restates her complaint that the jail had no library, and her husband was not allowed to bring books into the jail because jail officials claimed that drugs were being smuggled into the jail in these books. She asserts that the jail "should check them."

This allegation already has been discussed, and that discussion will not be repeated.

*Paragraph 60*: She complains that phone service hours were not posted and there was no privacy.

That states no Eighth Amendment violation.

*Paragraph 61*: Her complaint that there was no "outdoor light," or access to exercise, does not rise to the level of an Eighth Amendment violation.

23

\* *Paragraph 62*: Here she alleges a "complete violation of rules 1400-1-.15." Unlike paragraph 58, plaintiff lists examples: a denial of soap, toilet paper, unacceptable footwear, no socks, no comb, and no access to bottled water.

East of these allegations were previously advanced by plaintiff in other paragraphs and have been separately discussed.

\* *Paragraph 63*: She again complains of the thickness of her mattress, and that too has been previously discussed.

\* *Paragraph 64*: She complains that she was given no PIN to enable her to use the telephone, but it is noted that she does not assert that she requested a PIN and was refused one.

She also asserts in this paragraph that she notified a Mrs. Crum of her dietary restrictions and her religious preferences which plaintiff "could not put in the system."

This does not state an Eighth Amendment violation.

\* *Paragraph 65*: She alleges in this paragraph that the television and the "spotlights" were left on all night long "which is a well-documented CIA torture technique."

This undoubtedly was disagreeable and uncomfortable, but it does not rise to the level of an Eighth Amendment violation.

\* *Paragraph 66*: "Nurse Susan" allegedly told plaintiff that the jail declined to make any "special diet arrangements" for one prisoner (presumably plaintiff), and that all prisoners would be treated the same.

Without any additional facts to support this particular claim, it is assumed that

24

plaintiff's special dietary restrictions emanate from her belief that the water supply and food supply generally are toxin-laden and poisonous. For example, there are multiple references in her complaint to her demand for bottled water. In any event, this allegation is vague in the extreme.

&ast; *Paragraph 67*: Most of this paragraph is incomprehensible. The fourth sentence, for example, reads as follows: "Yet when I contacted Kristin, who is now to obtain a copy of the menu, I found that I is no working for Mountain States Health Alliance, I said I was no longer working for the prison and that Bridget Greene was the dietitian whom I could contact at the prison. I said when I was working there . . . ."

Apparently her claim in this paragraph appears in the last two sentences: that the minimum caloric requirement for a human being is 1800-2000 calories per day, yet the prisoners at the Greene County Jail are receiving, at the most, only 1000-1200 calories per day, and the milk is "being watered down."

Her allegations are vague, conclusory, and have no additional factual support.

&ast; *Paragraph 68*: In this paragraph plaintiff alleges that she was on a special diet due to her sensitivity to various chemicals, and that she suffered sinusitis, as well, but nevertheless she was told by jail officials that they would not make any special arrangements for her. She claims that she lost over five pounds and now has bone pain, a cough, and "neurological issues" related to [her] stay in the Greene County Jail.

Plaintiff fails to identify the food that she was "forced" to eat, or how that food exacerbated her sensitivity to various chemicals. In other words, it is conclusory.

*Paragraph 69*: She concludes her list of complaints against the jail by asserting that she and her husband had been "traumatized by this whole situation," and that "[w]e have been treated worse than livestock." She asserts that she and other prisoners complained of migraines from the "poisonous environment." She alleges that every time she sees a law enforcement officer, her "body freezes up . . . [and] I get physically ill . . . ."

This claim is frivolous.

## (8) David Caldwell (who apparently is a supervisor of the "illegal immigrants" who did the spraying)

\* Plaintiff complains that Mr. Caldwell didn't know the names of his illegal immigrants, only that they were from Honduras.

Putting aside any question of whether Mr. Caldwell was a state actor and therefore subject to being sued for a violation of civil rights, plaintiff's action against him clearly is barred by the running of the statute of limitations.

## (9) Greeneville Light and Power, Helena Chemical Co., Tommy Eubanks, Spraying For Excellence, and Michael Bowls.

\* On July 27, 2009, these defendants "deployed" illegal immigrants who conducted a "poison gas attack" on plaintiff's organic farm. Helena Chemical violated its contract with Greeneville Light and Power. These illegal immigrants were not properly licenced. GL&P and supervisor Chris Boles allowed illegal immigrants to destroy the plaintiffs' lives and contaminate their land. Mr. Eubanks was supposed to supervise these men, but instead was in Mississippi.

First, each of these claims is barred by the one-year statute of limitations.

26

Second, the herbicide manufacturers listed as defendants, including Helena Chemical, were not "state actors," *i.e.*, acting under color of state law, and they therefore cannot be sued for a violation of civil rights under 42 U.S.C. § 1983; *see, e.g., Parratt v. Taylor*, 451 U.S. 527, 555 (1981).

**(10) State of Virginia, Virginia Department of Environmental Quality and Steve Keen.**

\* These proposed defendants did not properly investigate plaintiff's complaints (apparently in Virginia) of improper spraying by one of her neighbors there. It is noted that neither Virginia, its Department of Environmental Quality, nor Mr. Keen are listed in the caption as defendants.

First and foremost, plaintiff's proposed suit against the state of Virginia is barred by the Eleventh Amendment to the Constitution. More importantly, whatever these three proposed defendants did or did not do occurred in the Commonwealth of Virginia, not in Tennessee, and on that account alone this court has no *in personam* jurisdiction over them.

**(11) Supreme Court of Tennessee**

\* This court denied plaintiff's appeal and issued a capias for her arrest on September 11, 2013. It allowed her unlawful conviction to stand.

The Supreme Court, assuming that it is an entity which can be sued as such, as well as the individual justices of that court, are absolutely immune to any suit, *Bush v. Rusch, supra*.

**(12) State of Tennessee Pesticide Division**

\* This agency "held back" evidence at her trial that would have confirmed chemicals

were sprayed on her property.

To the extent this § 1983 claim is against the state of Tennessee, it is barred by the Eleventh Amendment. To the extent that it is asserted against a state agency (with which this magistrate judge is unfamiliar), it is still barred by the Eleventh Amendment, *Tenn. Dept. of Human Services v. U.S. Dept. Of Education*, 979 F.2d 1162 (6th cir. 1992). Additionally, it is barred by the one year statute of limitations.

### (13) Greene County Circuit Court Clerk Gail Jeffers

\* She did not provide plaintiff with a jury of her peers.

Plaintiff's proposed claim against the Circuit Court Clerk is barred by the one year statute of limitations.

### (14) Her attorneys

\* They did not adequately represent her on appeal.

Plaintiff's attorneys were not "state actors," and therefore any deficiencies in their representation of plaintiff are not actionable under § 1983. Moreover, even if they are construed to be state actors, to allow suit to proceed against them necessarily implicates the illegality of plaintiff's underlying criminal conviction, which in turn implicates the *Heck v. Humphrey* doctrine, 512 U.S. 477 (1994): "In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed upon direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called

28

into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983," *Id*., at 487.

Plaintiff's claim that her lawyers did not adequately represent her necessarily assumes that her conviction and resulting sentence has been invalidated, which it has not been.

**(15) Environmental Protection Agency**

\* This federal agency allowed dangerous chemicals to be used without proper safety procedures, and failed to determine the long-term effect of exposure to glyphosate. The herbicide utilized by the "illegal immigrants," glyphosate, is the active chemical ingredient in the product originally patented by Monsanto Corporation and sold as Roundup.

There are various administrative avenues available to a citizen to contest an agency rule or regulation, or to contest approval or disapproval of a drug or chemical, and those need not be discussed here. Suffice it to say that a citizen cannot use a civil rights action filed under § 1983 to attack the validity or invalidity of any such regulation or approval.


## CONCLUSION AND RECOMMENDATION

The vast majority of plaintiff's allegations and claims are frivolous. Those that are not patently frivolous are either barred by the applicable statute of limitations, or fail to state a constitutional violation that can be pursued in an action filed pursuant to 42 U.S.C. § 1983.

To this point, the court has parsed plaintiff's complaint allegation by allegation, defendant by defendant, and has determined that defendant stated no valid claim against any

29

defendant because the claim is either frivolous, or barred by operation of law, or both.

But there is another and quite independent reason that this suit should be dismissed. Read in its entirety, *i.e.*, as a whole as opposed to considering separately each discrete part, it clearly is malicious and intended to be a means of visiting retribution on any person or agency that was involved directly or indirectly with plaintiff's arrest, prosecution, and conviction.

A proposed *in forma pauperis* complaint can be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(I) if the complaint is frivolous **or** malicious. *See, Clark v. Ocean Brand Tuna*, 974 F.2d 48 (6th Cir. 1992). This complaint is both. It is recommended that this action, 2:14-CV-115, be dismissed.

## 2:14-CV-117, Danielle White, Plaintiff, v. East Tennessee State University "ETSU", State of Tennessee, Defendants

In this § 1983 complaint, plaintiff claims that "over the past two or more years," she has reapplied for admission to East Tennessee State University; that the application she is required to fill out and submit to the university asks if she has been convicted of a felony; that she is required to reveal that she has been so convicted; and that the university thereafter put her application "on hold" until a background check was obtained, for which she was required to pay, notwithstanding that background checks are not required for non-felons. She alleges that this amounts to discrimination against her and all other convicted felons, and that

30

it violates her rights under the Fourth, Fifth, Ninth, Eleventh, and Fourteenth Amendments to the Constitution.

She demands that the university be enjoined from asking applicants about their criminal background; that the states of Tennessee and Virginia be enjoined from asking people about their criminal backgrounds[12]; that the court summarily order the university to admit her as a student; and that this court order the University and Tennessee to "honor, respect, and enforce . . . [her] Constitutional rights."

There is no case of which this court is aware that has held that the due process clauses of the Fifth or Fourteenth Amendments prohibit a prospective employer from asking if an applicant for a job has been convicted of a felony. It logically follows that a university is not prohibited from asking if an applicant for admission is a convicted felon.

The Fourth Amendment's prohibition against unreasonable search and seizures does not apply to these facts. Likewise, the court cannot fathom how the Eleventh Amendment's prohibition against a federal court entertaining a suit of a citizen against a state has any possible application.

The Ninth Amendment to the Constitution provides that the enumeration of certain rights in the Constitution does not otherwise limit the rights retained by the people. That amendment has no possible application to this suit.

_____

[12] She did not name Virginia as a defendant, and she says nothing about Virginia in the complaint other than including Virginia in her prayer for relief. What the Commonwealth of Virginia has to do with any of this is unknown.

31

## CONCLUSION AND RECOMMENDATION

This suit, 2:14-CV-117, has no merit, and it is frivolous. It should be dismissed to the extent that plaintiff seeks to maintain it *in forma pauperis*.

## 2:14-CV-118, Danielle White, and her minor sons, Plaintiffs, v. State of Tennessee, Virginia, and (Greene County, Tennessee, Sheriff) Steve Burns

The essential facts underlying this complaint are that plaintiff was convicted of aggravated assault, and sentenced; that she is now on parole and subject to various conditions, one of which is that she cannot possess firearms or other weapons; and that she cannot now vote due to her felony conviction.

She complains that her conditions of parole prevent her, as well as her husband and minor sons, from having firearms or other weapons on her property. She contends that she needs firearms to euthanize her farm animals which have been poisoned by pesticides [13]; to protect her livestock from predators; to hunt for food; and to protect herself and her family from a violent, threatening, and "evil" neighbor. She argues that the state and its parole officers have violated her Second Amendment right to keep and bear arms. She further argues that this somehow violates her religious beliefs and her right to freely exercise her religion.

---

[13] The pesticides figure prominently in case 2:13-CV-115, discussed in the first part of this report and recommendation.

Next, she says that Tennessee, its Department of Probation and Parole, and Criminal Court Judge Dugger (who is not named as a defendant) is denying her the right to life, liberty, and the pursuit of happiness.

She contends that her parole (or probation)[14] constitutes involuntary servitude under the Thirteenth Amendment.

She asserts that Virginia and Tennessee unconstitutionally deny her the right to vote because she has been convicted of a felony.

The proposed action against the Commonwealth of Virginia is clearly barred by the Eleventh Amendment to the Constitution.

To the extent plaintiff's *minor* sons have a constitutional right to keep and bear arms (which is by no means a given), their right cannot be vicariously asserted by plaintiff. Moreover, plaintiff is not licensed to practice law and therefore cannot represent them in this case, *Shepherd v. Wellman*, 313 F.3d 963 (6th cir. 2003). More importantly and certainly more on point, the prohibition against plaintiff possessing firearms has no bearing on her sons' or husband's right to do so. To be sure, if they choose to exercise their right to possess a firearm in her presence or in her residence, they would do so at the risk of putting her in violation of a condition of parole or perhaps even subjecting her to criminal prosecution, but that possibility does not impinge on any constitutional right of either plaintiff or member of her family.

A term of parole following a period of incarceration is not "involuntary servitude"

_____

[14] Whether parole or probation, the result is the same.

under the Thirteenth Amendment, *Lee-Bryant v. Beseau*, 2009 WL 980810 (W.D. Mich. 2009). Moreover, denying plaintiff the right to keep and bear arms while on parole (or probation) is not a constitutional violation. In this regard, plaintiff would be well-advised to keep in mind that her possession of a firearm as a convicted felon constitutes a violation of federal law, as well as state law.

As far as plaintiff's disenfranchisement is concerned, the United States Supreme Court, in *Richardson v. Ramirez*, 418 U.S. 24 (1974) held that state felon disenfranchisement statutes are constitutional.

## CONCLUSION AND RECOMMENDATION

This suit, 2:14-CV-118, states no viable claims and it should be dismissed.[15]

Respectfully submitted,


_____s/ Dennis H. Inman_____
United States Magistrate Judge

---

[15] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).